IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BERNARD F. WOODS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) Civ. No. 08-396-SLR | |
| | ) | |
| BRIAN GRANT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

---

Bernard F. Woods.  James T. Vaughn Correctional Center, Smyrna, Delaware.  Pro se Plaintiff.

Harshal Purohit-Patel, Assistant County Attorney, New Castle County Law Department, New Castle, Delaware.  Counsel for Defendants Brian Grant, Mark Grajewski, Terry O'Connor, and Travis McDermott.

---

**MEMORANDUM OPINION**

Dated: October 23, 2009
Wilmington, Delaware

*[signature]*
**ROBINSON, District Judge**

## I. INTRODUCTION

Plaintiff Bernard F. Woods ("plaintiff"), an inmate at the James T. Vaughn Correctional Center ("VCC"), filed this civil rights complaint pursuant to 42 U.S.C. § 1983. (D.I. 2)  Presently before the court are the parties' motions to compel, defendants' motion for summary judgment, and plaintiff's motion for an extension of time. (D.I. 21, 23, 27, 30)  The court has jurisdiction pursuant to 28 U.S.C. § 1331.  For the following reasons, the court will grant defendants' motions and will deny plaintiff's motions.

## II. PROCEDURAL AND FACTUAL BACKGROUND

The complaint alleges that on September 12, 2007, defendants Brian Grant ("Grant") and Mark Grajewski ("Grajewski"), detectives with the New Castle County Police Department ("NCCPD"), and Terry O'Connor ("O'Connor"), a police officer with the NCCPD K-9 unit, used excessive force while executing search and arrest warrants. More specifically, plaintiff alleges that, while he was handcuffed and face-down on the ground, Grajewski tased, kicked, and punched him in the head and face, and held him down while he was attacked by the police K-9.  He alleges that K-9 officer O'Connor assisted in the execution of the warrants and released his K-9 while plaintiff was handcuffed, face-down on the ground, and being tased, and O'Connor allowed the K-9 to attack him more than three times.

Plaintiff alleges that Travis McDermott ("McDermott"), a police patrolman with the NCCPD, interviewed him and fabricated a false statement to procure a second search warrant.  He alleges that Grant, Grajewski, and McDermott conspired and used the

false statements to deceive a judge in order to obtain a second search warrant. Plaintiff seeks damages and an "annulment" of the charges that resulted from defendants' alleged misconduct. After screening the complaint, the court dismissed plaintiff's claim challenging his conviction. (D.I. 6)

The facts before the court are that on September 12, 2007, pursuant to affidavit and application by defendants Grajewski and Grant, a search warrant issued from the Delaware Justice of the Peace Court. (D.I. 23, ex. A)  The same day, Grajewski and Grant executed the warrant, along with several assisting officers. (Id. at ex. B)  Plaintiff was sitting on the curb in front of his residence when the officers arrived.  Grant identified himself as a police office and asked plaintiff to lie on the ground, but plaintiff did not comply.  Grant tried to place plaintiff on the ground, but plaintiff stood up and moved toward Grant in an aggressive manner.  At that point, Grant used his "Conducted Energy Weapon" (i.e., taser), plaintiff went down on one knee, immediately stood up, and began to run towards Grant.  As plaintiff advanced, Grant administered a palm heel brachial stun which caused plaintiff to fall into a tree.  Grant tased plaintiff a second time, but plaintiff was able to punch Grant in the face.  Grant and plaintiff continued to struggle.

Assisting officers tased plaintiff a third time, but the tasing appeared to have no effect on him.[1]  Plaintiff fled and was pursued on foot by Grant and Grajewski.  Plaintiff punched Grajewski in the face before he was finally placed on the ground.  Plaintiff

---

[1]Grant believed that plaintiff was "possibly under the influence of narcotics due to his unusual amount of strength that was displayed by his ability to ignore all attempts at being restrained and his ability to break free from his tie cuffs." (D.I. 23, ex. B)

attempted to put his hands in his pockets and defendants believed plaintiff was attempting to retrieve a weapon. He was again tased, but he remained combative.

O'Connor and his K-9 partner arrived at the scene and saw several officers fighting with plaintiff, who was on the ground. Plaintiff refused all commands to stop resisting and place his hands behind his back. O'Connor told plaintiff to stop resisting arrest and warned him that the K-9 would be used if he would not comply. Plaintiff continued to resist and O'Connor released the K-9 who bit plaintiff on the left upper arm. Plaintiff remained combative and officers continued to tell plaintiff to stop. The K-9 was deployed a second time. Plaintiff received a bite in the ribs, and he relaxed momentarily. After the K-9 released plaintiff, he began to struggle and kick, and the K-9 was once again deployed. Plaintiff received bites in the upper left thigh and lower leg. Several officers gained control of plaintiff and handcuffed his wrists and flex cuffed his ankles. Plaintiff, however, broke free of the flex cuffs and began kicking one of the assisting officers. The K-9 was released a fourth time and plaintiff received a bite on the rear left leg. When asked why he did not stop when originally confronted by the police, plaintiff stated "that just isn't me." (D.I. 23, ex. D) Several officers carried plaintiff to a marked patrol car. He was taken to the Christiana Medical Center for treatment and evaluation, treated, released, and taken to the NCCPD. (D.I. 23, ex. D)

Once he arrived at the NCCPD, plaintiff waived his rights and agreed to speak to McDermott. (Id.) During the interview, plaintiff stated that there were two handguns in the basement ceiling. (Id.) Based upon plaintiff's statements, on September 13, 2007, Grant and Grajewski obtained a second search warrant to recover the additional

3

weapons. (D.I. 23, exs. B, D, E) Execution of the second search warrant resulted in the discovery of two handguns and a digital scale. (*Id.* at Exs. B, E)

Plaintiff was charged with resisting arrest, maintaining a dwelling/vehicle for drug distribution, possession of weapons, and several drug offenses. (*Id.* at exs. B, D) He was convicted and sentenced. (D.I. 24)

## III. MOTIONS TO COMPEL

On January 29, 2009, the court entered a scheduling order for the completion of all discovery on or before June 1, 2009. (D.I. 16) The parties served discovery upon each other and subsequently filed motions to compel. (D.I. 21, 27) Defendants filed their motion to compel on June 3, 2009, and their motion for summary judgment on July 1, 2009.[2] Plaintiff filed his motion to compel on July 24, 2009.

Pursuant to Fed. R. Civ. P. 26(b)(1), "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

---

[2]The court imposed a deadline of July 1, 2009, to file motions for summary judgment. (*See* D.I. 16)

4

### A. Defendants' Motion to Compel

Defendants served discovery upon plaintiff on May 6, 2009, and filed a motion to compel on June 3, 2009, after plaintiff objected to seven of the nine interrogatories and did not respond to the request for production of documents. (D.I. 18, 19, 21) Plaintiff did not respond to the motion to compel. However, almost three months after defendants filed their motion, plaintiff filed a motion to extend the time to serve and file a brief, but the motion did not indicate to which motion it was directed. (D.I. 30) In reviewing the court docket, at the time plaintiff filed the motion, he had filed responses to all pending motions except defendants' motion to compel. Accordingly, the court construes the motion as seeking an extension of time to respond to defendants' motion to compel. The motion to extend time, filed almost three months after defendants' motion, is untimely and, therefore, the court will deny the motion. (D.I. 30)

The court has reviewed plaintiff's objections to defendants' interrogatories and they are not well-taken. Accordingly, the court will grant defendants' motion to compel, but will not require plaintiff to respond to the discovery requests because, as discussed below, the court will grant defendants' motion for summary judgment on the record presented. (D.I. 21)

### B. Plaintiff's Motion to Compel

Plaintiff also filed a motion to compel defendants to answer interrogatories propounded upon them. (D.I. 27) Defendants oppose the motion. (D.I. 28) Plaintiff responds that he will be subjected to "fundamental unfairness" if defendants' motion for summary judgment is granted and his motion to compel is denied. (D.I. 29)

5

Plaintiff served interrogatories upon defendants on April 22, 2009, and a request for production of documents on June 3, 2009. (D.I. 17, 22) Defendants answered the majority of the interrogatories even though they also included objections to twenty-two of the twenty-five interrogatories. (D.I. 20) Defendants also objected to the request for production of documents on the grounds that it was filed after the June 1, 2009 discovery deadline. (D.I. 25)

The court has reviewed defendants' objections to plaintiff's interrogatories and request for production of documents. Defendants adequately responded to the interrogatories, and their objections are well-taken. Plaintiff's assertion that denial of his motion would be fundamentally unfair is unfounded. As evidenced by defendants' motion for summary judgment, plaintiff has been provided with numerous documents regarding the claims at issue. For the above reasons, the court will deny plaintiff's motion to compel. (D.I. 21)

## IV. SUMMARY JUDGMENT

### A. Standard of Review

The court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of material fact, the court may not weigh the evidence or determine the truth in the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all

6

reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).

The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). Where the movant is the defendant, or the party that does not have the burden of proof on the underlying claim, it "has no obligation to produce evidence negating its opponent's case." *National State Bank v. Federal Reserve Bank of New York*, 979 F.2d 1579, 1581 (3d Cir. 1992). Rather, the movant can simply "point to the lack of any evidence supporting the non-movant's claim." *Id.* A party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue" for trial. *Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Defendants move for summary judgment on the grounds that (1) plaintiff has failed to demonstrate that defendants participated in any alleged wrong conduct; (2) the conspiracy claims are based upon unfounded broad conclusory statements; (3) defendants are entitled to qualified immunity; and (4) punitive damages are not

7

available against municipal officials in their official capacities. Plaintiff opposes the motion.

## B. Discussion

### 1. Excessive force

The complaint alleges the use of excessive force by the arresting officers when plaintiff, handcuffed and face-down on the ground, was tased, kicked, punched in the head and face, held down, and attacked by a police K-9 in violation of his Fourth Amendment Rights. Defendants argue that summary judgment is appropriate because plaintiff cannot point to a single fact that demonstrates the use of excessive force during the arrest. Plaintiff argues that a preponderance of the evidence contradicts defendants' statements; that he sustained numerous injuries while handcuffed and face-down on the ground and is currently "under several medications" as a result of the assault.[3]

"[C]laims that law enforcement officers have used excessive force . . . in the course of an arrest . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard. . . ." *Graham v. Connor*, 490 U.S. 386, 395 (1989). "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397; *Kopec v. Tate*, 361 F.3d 772, 777 (3d Cir. 2004); *Mosley v. Wilson*, 102 F.3d 85, 95 (3d Cir. 1996). A court must judge the reasonableness of particular force "from

---

[3]Plaintiff's response consists solely of argument. (D.I. 24)

8

the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. The reasonableness of an officer's use of force is measured by "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* "Other relevant factors include the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time. *Moore v. Vangelo*, 222 F. App'x 167, 170 (3d Cir. 2007) (not reported) (citing *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997).

Plaintiff alleges the use of excessive physical force. Because the determination of whether the use of force is reasonable is a fact specific inquiry, courts have reached different results depending upon the facts and circumstances of each case. *See Bender v. Township of Monroe*, 289 F. App'x 526 (3d Cir. 2008) (not reported) (genuine issues of material fact precluded summary judgment on whether police officers retaliated and used excessive force against an arrestee by beating him while handcuffed, hitting him in the face with a flashlight, and breaking his cheekbone, because arrestee had kicked an officer); *Davis v. Bishop*, 245 F. App'x 132 (3d Cir. 2007) (not reported) (no excessive force by police officers in handcuffing and subduing arrestee who was intoxicated, disobeyed officer's orders to attempt to perform a field sobriety test and get off the hood of the police car, and eventually kicked out the rear

9

window of the police cruiser, and although officer admitted to having flung arrestee off the car, officers were confronted with an uncertain situation with an individual who was uncooperative); *Feldman v. Community College of Allegheny*, 85 F. App'x 821 (3d Cir. 2004) (not reported) (no excessive force by police officers when arresting college student even if, as student alleged, the officers wrestled student to the ground and kicked him in the head, when the student resisted arrest and actively struggled with the officers when they attempted to remove him); *Nolin v. Isbell*, 207 F.3d 1253, 1255, 1257 (11th Cir. 2000) (no excessive force where officer grabbed plaintiff from behind, threw him against a van three or four feet away, kneed him in the back, pushed his head into the side of the van, and searched his groin in an uncomfortable manner); *Ankele v. Hambrick,* Civ. No. 02-4004, 2003 WL 21223821 (E.D. Pa. 2003), *aff'd*, 136 F. App'x 551 (3d Cir. 2005) (show of force of slamming plaintiff onto hood of patrol car reasonable given the uncertainty presented by the arrestee's conduct).

Plaintiff also alleges excessive because of repeated taser applications. Depending upon the circumstances, the application of a taser may be a reasonable use of force. *See Zivojinovich v. Barner*, 525 F.3d 1059, 1071-73 (11th Cir. 2008) (per curiam) (use of a taser to subdue a suspect who had repeatedly ignored police instructions and continued to act belligerently found to be reasonably proportionate to the need for force); *Gruver v. Borough of Carlisle*, No. 4:CV 05-1206, 2006 WL 1410816 (M.D. Pa. 2006) (no excessive force when use of taser was consistent with level of resistance and there was no indication police officers applied any gratuitous force); *Armbruster v. Marguccio*, Civ. No. 05-344J, 2006 WL 3488969 (W.D. Pa. 2006) (issue of fact whether arrestee was resisting at the time of the first use of taser, but no

10

excessive force for subsequent taser use when officers reasonably believed arrestee was resisting arrest). Courts have held that the gratuitous use of force on a suspect who has already been subdued and placed in handcuffs is unconstitutional. *Bultema v. Benzie County*, 146 F. App'x 28, 35 (6th Cir. 2005) (not reported); *see also Parker v. Gerrish*, 547 F.3d 1, 8-11 (1st Cir. 2008) (upholding jury verdict that officer used excessive force in tasing an arrestee who had insulted the officers but also had complied with their requests and did not resist arrest); *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1282-87 (10th Cir. 2007) (use of a taser and related force against a nonviolent misdemeanant who did not flee or actively resist arrest found to be excessive).

Finally, the complaint alleges repeated K-9 attacks. The use of a police dog to hold a suspect is not per se unreasonable. *Moore v. Vangelo*, 222 F. App'x 167, 170 (3d Cir. 2007) (not reported) (citations omitted). Additionally, while injuries are not unusual when a police dog is used, the use of K-9 force to apprehend suspects is reasonable where the *Graham* factors weigh in favor of the police. (*Id.*) *See also Jarrett v. Town of Yarmouth*, 331 F.3d 140, 150 (1st Cir. 2003) (officer's decision to release K-9, in order to arrest a fleeing traffic violator, was not an exercise of objectively unreasonable force); *Mendoza v. Block*, 27 F.3d 1357, 1363 (9th Cir. 1994) ("[u]sing a police dog to find [a fleeing bank robber believed to be armed], and to secure him until he stopped struggling and was handcuffed, was objectively reasonable under these circumstances" despite the fact that the dog bit both arms, due to the suspect struggling, and severely injured him); *Matthews v. Jones*, 35 F.3d 1046, 1052 (6th Cir. 1994) (use of a dog to apprehend a suspect fleeing into woods was objectively

11

reasonable); *Barton v. Eichelberger*, 311 F. Supp. 1132, 1145 (E.D. Pa.1970) (use of a dog to grab and hold a fleeing suspect was objectively reasonable).

Initially the court notes that, in response to defendants' motion, plaintiff did not present any evidence to support his claim, and merely rested upon the allegations of his complaint. The reasonableness of defendants' conduct in their use of force is measured by "careful attention to the facts and circumstances" of this case. *See Graham*, 490 U.S. at 396. The facts before the court are that plaintiff continually resisted arrest, was aggressive, combative, and would not respond to defendants' commands even after repeated applications of tasers and repeated K-9 bites. The record reflects that the taser had no effect upon plaintiff and, even though his ankles were flex cuffed, he broke free of the restraints. Moreover, it appeared to defendants that plaintiff was reaching for a concealed weapon.

The facts and circumstances of plaintiff's arrest, as described by defendants, are not disputed with competent proof by plaintiff. Even when viewing the facts in the light most favorable to plaintiff, it is undisputed that plaintiff ran from officers and continued to resist arrest even after he was tased and bitten several times. When asked why he did not originally stop as the police requested, he responded, "that just isn't me." Keeping in mind that "police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation," the court concludes that the force used by defendants Grant, Grajewski, and O'Connor was objectively reasonable to gain control of the situation. *See Graham*, 490 U.S. at 397. Indeed, defendants were confronted with an individual who was uncooperative, combative, and who attempted to

12

flee. A reasonable jury could conclude that the force used was reasonable given the conduct of plaintiff.

For the above reasons, the court finds that any force that may have been applied does not rise to the level of a constitutional violation. Therefore, the court will grant defendants' motion for summary judgment as to the excessive force claims.

## 2. Search warrant

The complaint alleges defendants Grant, Grajewski, and McDermott conspired to obtain a second search warrant based upon false information. Defendants move for summary judgment on the grounds that the claim consists of broad conclusory statements, and plaintiff is unable to offer any facts demonstrating that the statements in question were false or that the search warrant contained omissions. They point to Grant's and Grajewski's September 13, 2007 affidavit in support of the second search warrant and how they obtained the information contained in the affidavit. Plaintiff responds that he has evidence, witnesses, and information on videotape that will expose defendants' false statements. Said evidence was not provided to the court.

A §1983 plaintiff who challenges the validity of a search warrant by asserting that law enforcement agents submitted a false affidavit to the issuing judicial officer must satisfy the two-part test developed by the Supreme Court in *Franks v. Delaware,* 438 U.S. 154, 155-56 (1978). Under *Franks* and its progeny, plaintiff must prove, by a preponderance of the evidence, that: (1) the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) such statements or omissions are material, or necessary, to the finding of probable cause. *Sherwood v. Mulvihill*, 113 F.3d 396,

13

399 (3d Cir. 1997) (citing *inter alia, Franks,* 438 U.S. at 171-72); *see also Collins v. Christie,* No. 08-3781, 2009 WL 2004179 (3d Cir. July 10, 2009). Plaintiff argues, but submits no evidence, to support his claim that defendants "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant."

The evidence indicates that subsequent to his arrest, plaintiff was interviewed by McDermott and told him about guns located in the basement ceiling. This information was placed in McDermott's report and used by Grant and Grajewski to obtain the second search warrant. There is no evidence before the court that defendants acted in reckless disregard for the truth in applying for the warrant and, based upon the record, a reasonable jury could not find otherwise.

For the above reasons, the court will grant defendants' motion for summary judgment on the false statement/search warrant issue.

### 3. Conspiracy

Defendants argue that plaintiff's conspiracy claim consists of nothing more than broad conclusory statements and, therefore, should be dismissed. Plaintiff responds that defendants fabricated false statements, discriminated against him on the basis of race,[4] and were involved in a racially motivated conspiracy. The complaint does not state under which conspiracy statute plaintiff proceeds.

For a conspiracy claim, there must be evidence of (1) an actual violation of a right protected under § 1983 and (2) actions taken in concert by defendants with the

---

[4]The claim of race discrimination is not before the court. Plaintiff raises the claim for the first time in his opposition to defendants' motion for summary judgment. (D.I. 24)

14

specific intent to violate that right. *Williams v. Fedor,* 69 F. Supp. 2d 649, 665-66 (M.D. Pa.), *aff'd,* 211 F.3d 1263 (3d Cir. 2000) (citing *Kerr v. Lyford,* 171 F.3d 330, 340 (5th Cir. 1999)). *See also Parkway Garage, Inc. v. City of Philadelphia,* 5 F.3d 685, 700 (3d Cir. 1993) (plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law). As discussed above, plaintiff's constitutional rights have not been violated. Therefore, his conspiracy claim pursuant to 42 U.S.C. § 1983 fails.

To the extent plaintiff attempts to state a claim under § 1985, it, too, fails. To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) that the conspiracy is motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. *See Farber v. City of Patterson,* 440 F.3d 131 (3d Cir. 2006); *Lake v. Arnold,* 112 F.3d 682, 685 (3d Cir. 1997). Civil rights conspiracy claims that are based only on suspicion and speculation instead of fact do not state a claim. *Jackson v. Gordon,* 145 F. App'x 774, 778 (3d Cir. 2005) (not reported) (citing *Young v. Kann,* 926 F.2d 1396, 1405 (3d Cir. 1991).

The complaint relies solely on subjective suspicions and unsupported speculation and contains no allegations that the alleged conspiracy was motivated by race or class-based invidious discrimination. Indeed, plaintiff injected the issue of race in his opposition to defendants' motion for summary judgment. The complaint contains labels

15

and conclusions and fails to show plaintiff's entitlement to relief. Moreover, there is nothing in the record to support plaintiff's conspiracy claim.[5]

For the above reasons, the court will grant defendants' motion for summary judgment on this issue.

### 4. Punitive damages

Plaintiff seeks punitive damages. Punitive damages are not available against an officer sued in his official capacity. *Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988). Accordingly, plaintiff's claim for punitive damages fails against defendants in their official capacity. Therefore, the court will grant defendants' motion for summary judgment on this issue.[6]

## V. CONCLUSION

Based upon the foregoing, the court will grant defendants' motion to compel and motion for summary judgment, and will deny plaintiff's motion to compel and motion to extend time.

An appropriate order will issue.

---

[5]The court will not address defendants' qualified immunity argument as it finds no violation of plaintiff's constitutional rights. *See Pearson v. Callahan*, –U.S.–, 129 S.Ct. 808, 818 (2009); *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

[6]In plaintiff's prayer for relief, he refers to defendants' agency and the NCCPD's lack of supervision. To the extent plaintiff attempts to allege a municipal liability claim, it fails. In order for municipal liability to exist, "there . . . must be a violation of the plaintiff's constitutional rights." *Brown v. Commonwealth of Pennsylvania, Dep't of Health Emergency Med. Services Training Inst.*, 318 F.3d 473, 482 (3d Cir. 2003). Because plaintiff's constitutional right were not violated, there is no basis for municipal liability.

16